IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| State of North Dakota, | |
| Plaintiff, | |
| vs. | Case No. 1:19-cv-00150 |
| United States of America, | |
| Defendant. | |

**ORDER DENYING UNITED STATES' MOTION FOR SUMMARY JUDGMENT, DENYING UNITED STATES' MOTION TO CERTIFY QUESTION TO THE NORTH DAKOTA SUPREME COURT, GRANTING, IN PART, AND DENYING, IN PART, NORTH DAKOTA'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING NORTH DAKOTA'S MOTION FOR HEARING**

## INTRODUCTION

[¶1]  THIS MATTER comes before the Court on two competing summary judgment motions. The United States filed its Motion for Summary Judgment on June 30, 2023. Doc. No. 337. North Dakota filed its Response on August 7, 2023. Doc. No. 362. The United States filed a Reply on September 1, 2023. Doc. No. 369. The United States also moved to certify a question of law to the North Dakota Supreme Court. Doc. No. 355. North Dakota filed a Motion for Partial Summary Judgment on June 30, 2023. Doc. No. 340. The United States filed a Response on August 4, 2023. Doc. No. 359. North Dakota filed a Reply on September 5, 2023. Doc. No. 373. North Dakota also filed a Motion for Hearing on September 13, 2023. Doc. No. 375.

[¶2]  For the reasons set forth below, the United States Motions for Summary Judgment and to Certify Question to the North Dakota Supreme Court are **DENIED**; North Dakota's Motion for Partial Summary Judgment is **GRANTED, IN PART, AND DENIED, IN PART**. Because the issues raised by the Parties can be decided on the record and the relevant caselaw, the Court

concludes a hearing on the matter is unnecessary. Accordingly, North Dakota's Motion for Hearing is **DENIED**.

## FACTUAL BACKGROUND

[¶3]     The following background is limited to those facts necessary to resolve the legal disputes presently before the Court. Little of the factual background has changed from the time the Complaint was filed. This case involves the costs associated with the damages suffered by North Dakota in responding to the contentious protests near the Backwater Bridge and United States Highway 1806 in Morton County, North Dakota, from around August 2016 to March 2017. After a clash with law enforcement in August 2016, protestors decided to set up camp on United States Army Corps of Engineers' ("Corps") land near the Backwater Bridge and Oahe Reservoir. Doc. No. 350-15, p. 3. This new camp would become the largest encampment during the protest. See Doc. No. 850-17, p. 3. One protestor described this campsite as the "main locus" of the protest activities. Doc. No. 338-32, p. 12:17 – 13:15. This site grew to an estimated 10,000 protestors. Doc. No. 352-7, p. 3.

[¶4]     After protestors began occupying Corps' land, on August 15, 2016, the Standing Rock Sioux Tribe ("Tribe") and the Corps began discussions for a special use permit to lawfully permit protestors to be on Corps' land. Doc. No. 350-20. The Corps and the Tribe went back and forth on the terms of the special use permit. Id. Around September 16, 2016, the Corps offered the Tribe a special use permit to use its lands on several conditions, including posting a $100,000 bond and securing liability insurance with a minimum $1,000,000 in coverage. Doc. No. 338-46, pp. 3-4. The same day the Corps informed the Tribe of the permitting conditions, the Corps issued a press release stating, "[t]oday the U.S Army Corps of Engineers (Corps) issued a Special Use Permit to the Standing Rock Sioux Tribe to use Federal lands managed by the Corps near Lake Oahe." Doc.

No. 338-45, p. 3; see also Doc. No. 338-46, p. 1 (email from Maj. James Startzell dated September 16, 2016, offering the Tribe the special use permit with the required conditions). Colonel John Henderson ("Col. Henderson") stated he issued the press release in the hopes it would promote order and control by explaining protestors' First Amendment rights would be accommodated within a defined area. Doc. No. 338-7, pp. 77:12 – 81:15; 87:20 – 89:10; 100:4 – 102:24. Henderson never corrected the press release to state the Tribe did not, in fact, have a special use permit for the protest activities because he was attempting to continue to work with the Tribe to secure compliance with the special use permit requirements. Id. at pp. 87:20 – 89:10. Nevertheless, neither the Tribe nor any of the protestors ever secured a special use permit from the Corps for the protesting activities during the timeframe alleged in the Complaint. Doc. No. 338-7, p. 85:4 – 86:2; 338-12, p. 76:6-16.

[¶5]    On November 25, 2016, Col. Henderson sent Tribal Chairman Archambault a letter. Doc. No. 350-2, p. 5-6. In this letter, Col. Henderson informed Chairman Archambault the Corps' land north of the Cannonball River would be closed to public use and access beginning December 5, 2016. Doc. No. 350-2, p. 5. Despite the closure of the north plot of land, Col. Henderson informed Chairman Archambault the Corps "has established a free speech zone on land south of the Cannonball River for anyone wishing to peaceably protest the Dakota Access pipeline project, subject to the rules of 36 C.F.R. Part 327." Id. Consistent with Col. Henderson's letter, then-Governor of North Dakota, Jack Dalrymple ("Gov. Dalrymple") issued an executive order for the protestors to evacuate the Corps lands north of the Cannonball River. Doc. No. 350-30.

[¶6]    Sheriff Kirchmeier believed the number of protestors increased after the Corps allowed protestors to occupy Corps lands. Doc. No. 338-9, p. 176:3-8. Doc. No. 338-14, p. 21:6-11. Despite this potential increase in protestors, from August 2016 until February 2017, the Corps was silent

in requesting local law enforcement remove protestors from the Corps' land. Doc. No. 338-9, p. 105:3-9. However, in February 2017, the Corps finally requested help in removing protestors from its land. See Doc. No. 338-9, p. 109: 2-6.

[¶7]     North Dakota's Complaint seeks to recover damages incurred from the emergency response costs related to the Dakota Access Pipeline ("DAPL") protests. The Complaint seeks a sum certain amount of $38,005,071.66. The Court previously denied the United States' Motion to Dismiss for lack of jurisdiction and for failure to state a claim. The Court has also denied the United States' Motion for Partial Summary Judgment on the question of damages. The remaining claims in the complaint are: Claim One – Public Nuisance, Claim Two – Negligence; Claim Four – Gross Negligence; and Claim Five – Civil Trespass.

[¶8]     The parties have moved for summary judgment. The United States asks the Court to dismiss this case for lack of subject matter jurisdiction asserting (1) the United States could not be held liable under North Dakota law because it did not owe North Dakota a duty of care; (2) even if the United States did owe a duty of care, the discretionary function bars this action; and (3) North Dakota's damages have no but-for causal relationship to the Corps' actions in this case. North Dakota asks the Court to find (1) the Corps failed to follow the non-discretionary special use permitting process before authorizing the protestors to occupy Corps land and (2) the United States owed a duty of care to North Dakota under the circumstances.

## STANDARD OF REVIEW

[¶9]     The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving

party." Schilf v. Eli Lilly & Co., 687 F.3d 947, 948 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" Dick v. Dickinson State Univ., 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting Anderson, 477 U.S. at 248). Courts must afford "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 707 (8th Cir. 2016) (quoting Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014)). "At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." Nunn v. Noodles & Co., 674 F.3d 910, 914 (8th Cir. 2012) (citing Anderson, 477 U.S. at 249).

[¶10] If the movant demonstrates the absence of a genuine issue of material fact, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id.

## ANALYSIS AND DISCUSSION

I. **Subject Matter Jurisdiction – Duty of Care Owed by United States to North Dakota and Certified Question to the North Dakota Supreme Court**

[¶11] Under the Federal Tort Claims Act ("FTCA"),

> claims against the United States for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); see also FDIC v. Meyer, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)). This provision operates as a "limited waiver of sovereign immunity, opening the door to state-law liability claims against the federal government for harm caused by government employees." Buckler v. United States, 919 F.3d 1038, 1044 (8th Cir. 2019). The issue before the Court is whether the United States could be held liable under North Dakota law if it were a private person under the circumstances of this case. Put shortly, because the Court has already decided this issue, it will not reconsider it at this stage in the litigation.

[¶12]   The United States argues the Court lacks subject matter jurisdiction contending that it does not owe North Dakota a duty under North Dakota law, characterizing their argument as an "'initial question of law for the court.'" Doc. No. 350, p. 27 (quoting Bjerk v. Anderson, 911 N.W.2d 343, 348 (N.D. 2018)). The United States also argues Sections 318 and 838 of the Restatement (Second) of Torts is inapplicable to the claims at issue here. Because this Court has already determined the public nuisance claim requires a negligence-based duty, the United States asks the Court to consider whether it owed a duty to North Dakota under a negligence theory of duty. Alternatively, the United States asks this Court to submit a certified question to the North Dakota Supreme Court to answer whether North Dakota law imparts a duty on the United States under the circumstances of this case.

[¶13]   North Dakota disputes this, arguing the undisputed facts establish the United States owed North Dakota a duty for each of the remaining counts in the Complaint under the circumstances. To that end, North Dakota argues the Corps had a duty under North Dakota law, both premises liability and general negligence principles, to prevent the protestors activities that caused harm to North Dakota. Similarly, North Dakota argues the Corps had a duty under North Dakota's nuisance law to protect North Dakota from harm caused by the protestors. Finally, North Dakota argues the

Corps has a duty under North Dakota civil trespass law to prevent the protestors from harming North Dakota.

[¶14] The Court has already determined this "preliminary question of law" at the Motion to Dismiss stage. The Court found the disputes in this matter were governed by Sections 318 and 838 of the Restatement (Second) of Torts (1965), which are consistent with standards under North Dakota law. Doc. No. 38, ¶¶ 64-66. This Court has made two crucial conclusions as to these provisions that remain in effect. First, "North Dakota state law supports the duties asserted by North Dakota in the public nuisance, negligence, gross negligence, and civil trespass claims." Doc. No. 38, p. 26. Second, "the duties outlined in sections 838 and 318 of Restatement (Second) of Torts are consistent with North Dakota law for purposes of concluding that North Dakota's claims for public nuisance, negligence, gross negligence, and third-party tress pass claims satisfy the FTCA's requirement that the claims be 'in accordance with the law of the place where the act or omission occurred.'" Id. at p. 28 (quoting 28 U.S.C. § 1346(b)(1)).

[¶15] Accordingly, Section 318 of the Restatement (Second) of Torts (1965) provides the relevant duty of care for North Dakota's negligence, gross negligence, and third-party trespass claims, which provides:

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
>
> (a) Knows or has reason to know that he has the ability to control the third person, and
> (b) Knows or should know of the necessity and opportunity for exercising such control.

[¶16] Similarly, Section 838 of the Restatement (Second) of Torts provided the basis of liability for North Dakota's Nuisance claim brought against the United States. Section 838 provides:

> A possessor of land upon which a third person carries on an activity that causes a nuisance is subject to liability for the nuisance if it is otherwise actionable, and
>
> (a) the possessor knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance, and
> (b) he consents to the activity or fails to exercise reasonable care to prevent the nuisance.

[¶17] There is no dispute the facts as articulated in discovery impute a duty upon the United States to protect North Dakota from harm and this Court has already concluded as a matter of law a duty existed under the circumstances. See Doc. No. 38, pp. 26-29. Whether the United States knew or had reason to know of its ability to control or necessity and opportunity to do so is a hotly contested factual issue that the Court will not resolve at the summary judgment stage. See Rest. 2d Torts, § 318. Likewise, whether the United States knew or had reason to know the protestor's activities involved an unreasonable risk of causing the nuisance and whether the United States failed to exercise reasonable care to prevent the nuisance are both disputed factual questions. See Id. at § 838. Nothing in the current briefing changes this analysis and the Court is unpersuaded by the United States' argument to reconsider these legal conclusions. This matter is ripe and ready for trial. The Court will make the appropriate factual findings and resolve all disputes at trial in this matter.

[¶18] To the extent the United States seeks to relitigate these prior holdings, the Court declines to further reconsider. Insofar as the established duties require foreseeability of harm, foreseeability is inherently a fact question to be reserved for resolution at trial. In short, the factual background of this case has not significantly changed to the extent that the Court's prior ruling on the Motion to Dismiss is inapplicable at this stage. Indeed, in North Dakota, whether a duty exists is a question of law, but if the duty depends on the foreseeability of injury, that question is to be left to the fact finder unless the issue is "such that reasonable men could not differ." Kirton v. Williams Elec. Co-

op., Inc., 265 N.W.2d 702, 704 (N.D. 1978). The Court has already concluded as a matter of law the United States owed a duty to North Dakota under the circumstances of this case. Doc. No. 38, ¶¶ 64-66. That decision became the law of the case. See Thompson v. C.I.R., 821 F.3d 1008, 1010-11 (8th Cir. 2016) (the law-of-the-case doctrine "'prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings to insure uniformity of decisions, protect the expectations of the parties[,] and promote judicial economy'" (quoting Klein v. Arkoma Prod. Co., 73 F.3d 779, 784 (8th Cir. 1996)).

[¶19] Discovery has not changed the analysis. The legal conclusions in the Motion to Dismiss Order remain but the factual disputes will be resolved at trial. In other words, the Court has found the United States owed North Dakota a duty for the remaining claims in the Complaint. The applicability of those duties to the facts of this case go to the question of breach and causation, not the existence of a duty in the first place. Those factual questions will be resolved at trial, not at the summary judgment stage. See Perius v. Nodak Mut. Ins. Co., 2010 ND 80, ¶ 13, 782 N.W.2d 355 ("'Negligence involves questions of fact and is generally inappropriate for summary judgment unless the evidence is such that a reasonable factfinder can reach only one conclusion.'" (quoting Klimple v. Bahl, 2007 ND 13, ¶ 4, 727 N.W.2d 256)).

[¶20] Accordingly, the United States Motion for Summary Judgment regarding subject matter jurisdiction and the duty it owed to North Dakota is **DENIED**. Similarly, because the duties owed, as discussed above, involve resolution of factual questions, North Dakota's Motion for Partial Summary Judgment on the question of duty owed is **DENIED**.

[¶21] This Court has concluded the United States owed North Dakota a duty under the circumstances pursuant to those outlined in Sections 318 and 838 of the Restatement (Second) of Torts. See Doc. No. 328, pp. 26-29. The Court has discretion to certify a question to the North

Dakota Supreme Court but believes such a certification is unnecessary given the Court's holdings. See McKesson v. Doe, 141 S. Ct., 48, 51 (2020) ("Certification is by no means 'obligatory' merely because state law is unsettled; the choice instead rests 'in the sound discretion of the federal court.'" (quoting Lehman Brothers v. Schein, 416 U.S. 386, 391 (1974)). Although certification may be advisable before addressing constitutional issues, McKesson, 141 S. Ct. at 51, no such issue is present on the face of the claims here. While the claims may touch on the first amendment rights of the protestors, they are, in themselves, constitutional. Rather, the claims presented in the complaint are tort claims brought against the United States. Additionally, the Court settled this issue as a matter of law at the motion to dismiss stage. The United States could have requested a certified question earlier in the case. At this stage, it is simply too late to certify a question of law this Court has already resolved. See Perkins v. Clark Equipment Co., Melrose, Div., 823 F.2d 207, 210 (8th Cir. 1987) ("The practice of requesting a certification after an adverse judgment has been entered should be discouraged. Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision. Once a question is submitted for decision in the district court, the parties should be bound by the outcome unless other grounds for reversal are present."). Accordingly, the United States' Motion for Certified Question is **DENIED**.[1]

---

[1] There is discussion in the briefing regarding the implications the circumstances had on protestors' first amendment rights and the need for the North Dakota Supreme Court to balance those factors. That is not the issue presently before the Court. The issue ultimately for trial is whether the Corps' actions in this case invited and encouraged the protestors and their unlawful behavior such that the Corps should be held liable under North Dakota law. As discussed above, the Court has concluded as a matter of law the United States owed North Dakota a duty and this was settled at the motion to dismiss stage. Doc. No. 38, ¶¶ 64-66. These implications may become relevant at trial, but do not impact the outcome of whether a duty exists under the circumstances of this case.

## II. Discretionary Function

[¶22]  The United States argues it is entitled to summary judgment because the undisputed facts show the Court lacks subject matter jurisdiction due to the discretionary function exception to the limited waiver of sovereign immunity in the FTCA. In making this argument, the United States argues the Corps had discretion to allow the protestors to use its land during the protests regardless of the statutory and regulatory permitting requirements. Even if the permitting requirements were mandatory, the United States argues it had discretion in the method of handling the illegal presence of the protestors on Corps land.

[¶23]  North Dakota argues it is entitled to summary judgment because the undisputed facts show the United States violated a mandatory statutory and regulatory duty to go through the permitting process. The Court agrees with North Dakota.

[¶24]  It is the law of the case that the Corps had a mandatory duty to follow the permitting procedures prior to issuing a permit. Doc. No. 38, pp. 9-25. The Court will not reconsider its legal holding in its prior Order that directly controls this issue. Rather, the focus is on the facts. The undisputed facts show: (1) once protestors began assembling on Corps land, the Corps began discussions with the Tribe to get them a special use permit to lawfully be on Corps land; (2) the Corps provided the requirements to the Tribe to obtain a special use permit, which included a $100,000 bond and $1,000,000 liability insurance coverage; (3) the Tribe never returned the application for the special use permit; (4) despite the Tribe's failure to submit the application, the Corps issued a press release stating it had, in fact, issued a special use permit; and (5) Col. Henderson sent Chairman Archambault a letter stating the Corps established a free speech zone on which protestors could assemble. It is undisputed that (1) the Corps never issued a permit, (2) the Tribe never completed the permit application process; (3) while discussion about the permitting

process occurred, the process was abandoned ultimately abandoned. A reasonable fact finder could conclude the press release and letter at issue in this case constituted a *de facto* permit that seemed to allow the protestors to be on Corps land.

[¶25]  Based upon the legal conclusions in the Court's Order on the United States' Motion to Dismiss, North Dakota is entitled to summary judgment on the issue of whether the United States violated the mandatory special use permitting process. As the Court has repeatedly concluded, the damages in this case flow directly from the Corps' failure to follow the permitting process. Doc. No. 38, pp. 24 ("While 36 C.F.R. Part 327 and the Implementing Guidance do not require any specific enforcement conduct by the Corps in response to the protesters' conduct, the Court concludes the Corps failure to comply with the mandatory permitting process tainted all other decisions made by the Corps. Here, the maxim applies: 'You break it, you bought it.'"); 25 ("The purpose of the discretionary function exception is to prevent judicial second-guessing regarding administrative decisions grounded in social, economic, and political policy. It is not a bar to decisions made without regard to mandatory procedures and the bad consequences resulting from not following those mandatory procedures." (internal citation omitted)).

[¶26]  As for the United States argument it is entitled to summary judgment because of subsequent discretionary actions, the Court has rejected those arguments and the United States has not provided a basis for the Court to reconsider its prior legal conclusions. This case continues to be supported by Appley Bros. v. United States, 7 F.3d 720 (8th Cir. 1993). In Appley Bros., the plaintiffs sued the United States "for losses as a result of the United States Department of Agriculture's negligent inspection of the Bird Grain Company warehouse, a federally licensed warehouse." Id. at 721. USDA policy "required that a new form be issued" when a federally-licensed grain company did not correct a reported shortfall from an initial grain inspection. Id. at

725. Ultimately, the enforcement decision to close the warehouse for such a violation was a discretionary function of the USDA. Id. However, prior to exercising that discretion, the USDA was required to "check to see if Bird Grain had cured the deficiencies found on April 1 and to issue a new TW-125 reporting information." Id. The failure to perform a mandatory duty, even though subsequent actions were discretionary, did not place this case in the realm of discretionary function. Id. The Eighth Circuit reversed the district court's discretionary function finding and remanded for further proceedings. Id. On remand, the facts significantly changed during summary judgment and ultimately warranted a finding of discretionary function. Appley Bros. v. United States, 924 F. Supp. 944, 949 (D.S.D. 1996) ("The government has produced evidence substantially different than what was before Judge Jones and the Eighth Circuit, and more importantly, the government's evidence is uncontroverted.").

[¶27] This is simply not the case here. The evidence as it has come in at summary judgment is not substantially different than the allegations in the Complaint. The Court's prior finding it had jurisdiction still governs this dispute. The Corps had a non-discretionary duty to follow its permitting procedures as a matter of law. It failed to do so. This is undisputed. The subsequent discretionary decisions are irrelevant under Appley Bros. because failure to perform the initial non-discretionary requirement renders subsequent discretionary decisions ineffective in this regard. See 7 F.3d at 725-26 ("Although the revocation order itself is discretionary, the inspectors' failure to see if Bird Grain cleared the violations noted in the April 1 report prevented the Secretary from exercising discretion to decide whether to revoke Bird Grain's license."). The factual issues remaining relating to the United States' liability in this case will be determined after the Court receives the complete record at trial.

[¶28] Accordingly, the United States' Motion for Summary Judgment on this issue is **DENIED**. North Dakota's Motion for Partial Summary Judgment on whether the Corps violated a non-discretionary duty by failing to follow its mandatory special use permitting process is **GRANTED**.

### III. Causation

[¶29] The United States contends the Corps' actions had no but-for relationship to the alleged damages in this case. The Court has concluded, "[t]he claims are permissible under North Dakota law but are subject to the fact-finder's determination that the United States proximately caused the emergency response when it allowed and encouraged protestors on federal land without requiring the requisite permit." Doc. No. 106, ¶ 43. Furthermore, negligence claims such as those remaining in this case are typically "inappropriate for summary judgment" barring only one reasonable interpretation of the evidence. Perius, 2010 ND 80 at ¶ 13. And, in North Dakota, causation is a question of fact for resolution at trial. C & C Plumbing & Heating, LLP v. Williams County, 2014 ND 128, ¶ 22, 848 N.W.2d 709 ("Proximate causation is a question of fact."). Indeed, reading the facts in the light most favorable to North Dakota on this issue, a reasonable fact finder could conclude the Corps actively encouraged and invited the protestors onto its land thereby encouraging the destructive behavior at issue in this case. But that is a question for resolution at trial, not summary judgment. Accordingly, the United States' Motion for Summary Judgment on the issue of causation is **DENIED**.

### CONCLUSION

[¶30] Whether the United States owed North Dakota a duty under the circumstances and whether the discretionary function exception bars jurisdiction in this case are legal questions in nature that were decided at the motion to dismiss stage. See Doc. No. 38. The factual record as developed does not change the Court's analysis of those issues now at summary judgment. The findings at

the motion to dismiss stage set the law of the case. The factual disputes underlying the legal issues will be properly resolved of at trial. Nevertheless, there is one matter that is factually undisputed: the Corps failed to follow its mandatory special use permitting procedures.

[¶31] Accordingly, the United States' Motion for Summary Judgment is **DENIED**. North Dakota's Motion for Partial Summary Judgment is **GRANTED** insofar as the undisputed evidence shows the Corps failed to follow its mandatory permitting procedures. While the Court has determined as a matter of law the governing duty owed by the United States to North Dakota, resolution of the question of duty is wrapped up in the foreseeability of harm question, which is inherently factual in nature to be resolved at trial. In this regard, North Dakota's Motion for Partial Summary Judgment is **DENIED**.

[¶32] **IT IS SO ORDERED**.

DATED December 13, 2023.

Daniel M. Traynor, District Judge
United States District Court