# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE OF NORTH DAKOTA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:19-cv-00150-DMT-CRH |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF STATE OF NORTH DAKOTA'S SECOND AMENDED INITIAL DISCLOSURES**

Pursuant to Fed. R. Civ. P. 26(a)(1), Plaintiff the State of North Dakota makes its initial disclosures as follows. Plaintiff reserves the right to amend or supplement these disclosures.

1. **Rule 26(a)(1)(A)(i) – the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:**

    a. <u>North Dakota Government Officials</u>. These individuals may be contacted through undersigned counsel unless otherwise indicated.

    i. North Dakota Governor's Office

    Individuals in the North Dakota Governor's Office administered the State's response to the Dakota Access Pipeline ("DAPL") protest and interacted with officials from the federal government. Given this role, they likely have knowledge of facts relating to protest activity, communications between and among state and federal officials to manage the response, and the expenses incurred by the State of North Dakota associated with protest activity.

    1. Governor Doug Burgum
    2. Former Governor Jack Dalrymple
    3. Lt. Governor Brent Sanford

4. Former Lt. Governor Drew Wrigley: In addition to the above knowledge, Mr. Wrigley was present during briefings and relied on information from others who provided updates regarding the DAPL protests.

5. Former Policy Director to Governor Burgum Levi Bachmeier

6. Former Chief of Staff Ron Rauschenberger

ii. North Dakota Department of Transportation

Individuals in the North Dakota Department of Transportation managed the need for road closures, posted notifications and signage regarding these closures, managed traffic, and monitored activity on the Backwater Bridge, including fires set by DAPL protestors and related activities. Given this role, these individuals would likely have knowledge of the influx of protesters, the areas affected, how protest activity impeded State roads, damage to State property, and expenses incurred by the State of North Dakota associated with protest activity.

1. Former Director Grant Levi

2. Former Director Darcy Rosendahl

3. Director of Planning and Asset Management Scott Zainhofsky

4. State Bridge Engineer Jon Ketterling: In addition to the above knowledge, Mr. Ketterling was tasked with determining the integrity of the Backwater Bridge and is familiar with the damage to the bridge caused by the protests.

5. Director of Environmental and Transportation Services Mark Gaydos

6. Director of Office of Operations Wayde Swenson, internal operations

7. Information Management Officer Steve Barreth

iii. North Dakota Highway Patrol

Individuals employed by the North Dakota Highway Patrol played a role in managing the DAPL protests, enforced the closing of roadways, and monitored traffic and encampments blocking roadways. Given this role, these individuals would likely have knowledge of how protest activity impeded State roads and caused damage to State property, and expenses incurred by the State of North Dakota associated with protest activity.

2

1. Former Colonel Michael Gerhart, Jr.: In addition to the above knowledge, Col. Gerhart is likely to have knowledge regarding the State's tactical operations center.

2. Colonel Brandon Solberg: In addition to the above knowledge, Col. Solberg is likely to have knowledge regarding the State's tactical operations center.

3. Major Aaron Hummel

4. Major Thomas Iverson: In addition to the above knowledge, Maj. Iverson was the PIO of operations and is likely to have knowledge of the State's public outreach.

5. Captain Eric Pederson

6. Captain Bryan Niewind

7. Lieutenant James Huschka

8. Sergeant Shannon Henke

9. Dennis Gallagher: Mr. Gallagher served as a pilot for the Highway Patrol and would likely have knowledge of the agency's monitoring efforts.

iv. North Dakota Department of Emergency Services

Individuals in North Dakota's Department of Emergency Services were involved with planning the State's response to the DAPL protest activity through logistics and transport, communicating with officials from the federal government, and monitoring and distributing resources. Given this role, these individuals are likely to have knowledge of the State's deployment of resources to respond to protest activity and communications between and among state and federal officials to manage the response.

1. Adjutant General Alan Dohrmann

2. Former Homeland Security Director and Homeland Security Advisor Greg Wills: At the time of the protests, Mr. Wills was responsible for completing emergency paperwork. Therefore, in addition to the above knowledge, he would likely have knowledge of the EMAC process, the State's response costs, and damages.

3. Homeland Security Director and Homeland Security Advisor Cody Schulz: At the time of the protests, Mr. Schulz served as a

3

       Commissioner for Morton County and was responsible for coordinating State and county resources. Therefore, in addition to the above knowledge, he would likely have knowledge of the State's response costs.

4. Planning Section Chief Sean Johnson

5. State Radio Director Dan Donlin: Mr. Donlin was the Chief of Police for the Bismarck Police Department at the time of the protests. Therefore, he would likely have knowledge of the City of Bismarck's role in responding to protest activity.

6. Southwest Regional Emergency Response Coordinator Keith Witt: In addition to the above knowledge, Mr. Witt was responsible for compiling protest-related information and developments and likely has knowledge of protest activity.

7. Former Assistant to the Adjutant General Holly Gaugler: In addition to the above knowledge, Ms. Gaugler coordinated payment of different expenses associated with responding to and remedying damage from protest activity and likely has knowledge of the State's costs resulting from protest activity.

8. Former State Radio Director Mike Lynk: In his role as State Radio Director, Mr. Lynk likely has knowledge of the State's efforts to coordinate law enforcement communication via State radio.

v. North Dakota Bureau of Criminal Investigation

Individuals in the North Dakota Bureau of Criminal Investigation served as investigators and analysts to assist local law enforcement investigate potentially criminal activity stemming from the DAPL protests and managed investigatory resources. Given this role, these individuals would likely have knowledge of potentially criminal activity in the area during the protests and the State's response to such criminal activity.

1. Former Director Dallas Carlson

2. Director Lonnie Grabowska

3. Chief Agent Ben Leingang

4. Chief Agency Casey Miller

5. Supervisory Special Agent Arnie Rummel

  6. Supervisory Special Agent Tim Erickson

  7. Special Agent Lindsay Wold

  8. Special Agent Joseph Arenz

  9. Special Agent Craig Bachmeier

  10. Special Agent Luke Kapella

  11. Formal Special Agent Scott Betz

  12. Former Special Agent Rob Fontenot

  13. Former Chief Agent Phil Pfennig

  14. Special Agent Jeramie Quam

  15. Special Agent Shawn Banet

  16. Special Agent Duane Stanley

  17. Special Agent Steve Gilpin

  18. Special Agent Scott Voeltz

  19. Incident Manager Justin Wendland

vi. North Dakota Bureau of Indian Affairs

Individuals and the North Dakota Bureau of Indian Affairs focused on planning and enforcement on the reservation side. Therefore, these individuals would likely have knowledge of the State's deployment of resources to respond to DAPL protest activity and communications between and among state and federal officials to manage the response on Indian lands.

  1. Officer Jonathan Chavez

  2. Officer Shane Mimsy

vii. North Dakota Office of Attorney General

  1. Former Finance and Administration Employee Savannah Schmidt: Ms. Schmidt was involved in compiling expenses that the State incurred from responding to and remedying damage from the DAPL protest activity and likely has knowledge of the State's costs resulting from protest activity.

    viii. North Dakota Department of Environmental Quality

Individuals from the North Dakota Department of Environmental Quality were responsible for enforcing environmental regulations in the protest area. These individuals are likely to have knowledge of environmental violations caused by the DAPL protest activity and the protest's effects on the local environment.

1. Director Dave Glatt
2. Former Director of Waste Management Division Scott Radig

    ix. County & City Officials

The following city and county officials were responsible for coordinating the emergency and law enforcement field response to protest activity. These individuals would likely have knowledge of the State's response to DAPL protest activity, communicating with officials from the federal government, and monitoring and distributing resources from a law enforcement and local government perspective in their respective cities and counties.

1. Morton County Sheriff Kyle Kirchmeier
2. Morton County Lieutenant Brian Steele
3. Morton County Captain Jay Gruebele
4. Morton County Lieutenant Tom Sharp
5. Morton County Commissioner Bruce Strinden
6. Morton County Emergency Management Director Cody Mattson: In addition to the above knowledge, Mr. Mattson developed area maps and coordinated local emergency alerts and would have knowledge of such responsibilities.
7. Assistant Morton County State's Attorney Gabrielle Goter
8. Former Morton County Emergency Manager Tom Doering
9. Morton County PIO Maxine Herr: In addition to the above knowledge, Ms. Herr ran the coordination centers between state and local law enforcement and would have knowledge of such responsibilities.
10. Morton County Major Lin Woodall
11. Morton County State's Attorney Chase Lingle

      12. Cass County Former Sheriff Paul Laney

      13. Cass County Sheriff Jesse Jahner

      14. Stutsman County Sheriff Chad Kaiser

      15. Mercer County Sheriff Dean Danzeisen

      16. McLean County State's Attorney Ladd R. Erikson

      17. City of Mandan Chief of Police Jason Ziegler

x. North Dakota National Guard

Individuals in the North Dakota National Guard were deployed to respond to DAPL protest activity. These individuals would have knowledge of the protests and documentation thereof.

      1. PIO Amber Schatz

      2. PIO Rob Keller

xi. Bismarck Police Department

The Bismarck Police Department was responsible for coordinating the emergency and law enforcement field response to DAPL protest activity. These individuals would likely have knowledge of the State's response to protest activity, communicating with officials from the federal government, monitoring and distributing resources from Bismarck, and potentially criminal activity resulting from protest activity.

      1. Deputy Chief Jason Stugelmeyer,

      2. Lieutenant Glenn Ternes

      3. Lieutenant Cody Trom

      4. Sergeant Roger Marks

xii. North Dakota Indian Affairs Commission

The following individuals working for the North Dakota Indian Affairs Commission were the liaisons between the State of North Dakota and Native American tribes, including the Standing Rock Sioux. These individuals would likely have knowledge of communicating with tribal leaders regarding the protests.

    1. Executive Director of the Indian Affairs Commission Scott Davis

 b. <u>Federal Government Officials</u>

  i. U.S. Army Corps of Engineers ("USACE")
  441 G Street NW
  Washington, DC 20314-1000
  (202) 761-0018 (legal)

  Upon information and belief, the following USACE individuals would have knowledge of facts surrounding the DAPL protests, USACE's and the federal government's responses to such protests, USACE and federal government policies regarding the DAPL protests, the federal government's resource management regarding the DAPL protests, and coordination and communication with State officials regarding the DAPL protests.

   1. Major General Scott Spellman

   2. Major Pope French

   3. Captain Ryan Hignite

   4. Jon Voeller

   5. Colonel John Henderson
    SAF/IE 1665 Air Force Pentagon
    Washington, DC 20330-1665
    (current address)

   6. Brigadier General D. Peter Helmingler

   7. Former Assistant Secretary of the Army Jo-Ellen Darcy

   8. Natural Resources Specialist Ralph Gabrysh (retired)

   9. Public Affairs Specialist Eileen Williamson

   10. Oahe Project Manager Eric Stasch

   11. Project Manager Keith Fink

   12. District Deputy Commander and Chief of Staff Lt. Col. James Startzell

   13. District Counsel, Omaha District Thomas Tracy

ii. United States Department of Justice

Upon information and belief, the following DOJ individuals would have knowledge of facts surrounding federal government's responses to the DAPL protests, the federal government policies regarding the DAPL protests, coordination and communication with State officials regarding the DAPL protests and jurisdiction, the federal government's resource management, and federal government investigative and enforcement efforts in response to potentially criminal activity.

1. Former U.S. Attorney General Loretta Lynch
   950 Pennsylvania Ave., NW
   Washington, DC 20530
   (202) 514-2000

2. Former U.S. Attorney of District of North Dakota Chris Myers
   William L. Guy Federal Building
   U.S. Attorney's Office
   220 East Rosser Ave, Room 372
   Bismarck, ND 58502-0699
   (701) 530-2420

3. Jake O'Connell
   Federal Bureau of Investigation
   935 Pennsylvania Ave., NW
   Washington, DC 20535-0001
   (202) 324-3000

4. Brian Hoff
   Federal Bureau of Investigation
   935 Pennsylvania Ave., NW
   Washington, DC 20535-0001
   (202) 324-3000

5. Brian VanOosbree
   Federal Bureau of Investigation
   935 Pennsylvania Ave., NW
   Washington, DC 20535-0001
   (202) 324-3000

iii. Department of Homeland Security

Upon information and belief, the following DHS individuals would have knowledge of facts surrounding coordination and communication with State officials regarding the DAPL protests and jurisdiction and federal government investigative and enforcement efforts in response to potentially criminal activity and domestic terrorism.

      1. Intelligence Officer Ryan Wentz
         245 Murray Lane, SW
         Washington, DC 20528-0075
         (202) 282-8000

iv. United States Department of Interior
    1849 C St., NW
    Washington, DC 20240
    (202) 208-3100

Upon information and belief, the following DOI individuals would have knowledge of facts surrounding coordination and communication with State officials regarding the DAPL protests and jurisdiction, policies with regard to tribal lands, and public statements regarding the protests.

      1. Former Secretary Sally Jewel

      2. Lowry Crook: In addition to the above knowledge, Mr. Crook was the liaison between Secretary Jewel and the State of North Dakota and had frequent and direct communications with the State of North Dakota Governor's Office. Therefore, Mr. Crook would have knowledge of these communications.

v. White House Officials

Upon information and belief, the following White House individuals would have knowledge of facts surrounding the federal response to the DAPL protests, policies with regard to Indian lands, and public statements regarding the protests.

      1. Former Deputy Associate Director of Intergovernmental Affairs under President Obama Jodi Gillette
         1600 Pennsylvania Ave., NW
         Washington, DC 20500
         (202) 456-1414

vi. United States Bureau of Indian Affairs

Upon information and belief, the following DOI individuals would have knowledge of facts surrounding coordination and communication with State officials regarding the DAPL protests and jurisdiction, policies with regard to tribal lands, and public statements regarding the protests.

      1. Darren Cruzan, Office of Justice Services
         MS-4606-MIB
         1849 C St., NW
         Washington, DC 20240

      (202) 208-5116

  vii. U.S. Marshals Service

   Upon information and belief, the following individuals would have knowledge of facts surrounding federal government's responses to the DAPL protests, coordination and communication with State officials regarding the protests and jurisdiction, and federal government investigative and enforcement efforts in response to potentially criminal activity.

   1. Former Director Stacia Hylton
    1215 S Clark St
    Arlington, VA 22202
    (202) 307-9100

   2. U.S. Marshal Paul Ward (retired)
    Old Federal Building
    655 1st Avenue N., Room 317
    Fargo, ND 58108
    (701) 297-5760

  viii. Bureau of Alcohol, Tobacco, Firearms and Explosives

   Upon information and belief, the following individuals would have knowledge of facts surrounding federal government's responses to the DAPL protests, coordination and communication with State officials regarding the protests and jurisdiction, and federal government investigative and enforcement efforts in response to potentially criminal activity.

   1. Special Agent Derek Hill
    250 North 31st Street, Ste. 7
    Bismarck, ND 58502
    (701) 328-9893

c. <u>Third Parties.</u>

  i. Harold Frazier
   Chairman of the Cheyenne River Sioux Tribe
   P.O. Box 590
   Eagle Butte, SD 57625
   (605) 964-4155

   Upon information and belief, Mr. Frazier would have knowledge of facts surrounding the DAPL protest activity and communications with the federal government regarding protest activity.

ii. Jonathan F. Thompson
Executive Director & CEO National Sheriff's Association
1450 Duke Street
Alexandria, VA 22314
(703) 836-7827

Upon information in belief, Mr. Thompson would have knowledge of facts regarding communications between the United States and the State of North Dakota regarding obtaining law enforcement assistance at the protests and efforts by the State of North Dakota to obtain such assistance.

iii. David Archambault II
Former Chairman of the Standing Rock Sioux Tribe
P.O. Box D, Building #1
North Standing Rock Ave.
Fort Yates, ND 58538
(701) 854-8500

Upon information and belief, Mr. Archambault would have knowledge of facts surrounding the DAPL protest activity and communications with the federal government regarding protest activity.

iv. Elliott Ward
Emergency Manager for Standing Rock Sioux Tribe
*Upon information and belief, Mr. Ward may be contacted through the Standing Rock Sioux Tribe.*

Upon information and belief, Mr. Ward would have knowledge of facts surrounding the DAPL protest activity and communications with the federal government regarding protest activity.

v. LaDonna Brave Bull Allard
Landowner, Member of the Standing Rock Sioux, Protestor
*Upon information and belief, Ms. Allard may be contacted through the Standing Rock Sioux Tribe.*

Upon information and belief, Ms. Allard would have knowledge of facts surrounding the DAPL protest activity, communications with the federal government regarding protest activity, and applications for a permit from the USACE.

vi. Pyramid Communications
Communications Service
1932 First Avenue Suite 507
Seattle, WA 98101
(206) 374-7788

12

Upon information and belief, Pyramid Communications would have documentation and have knowledge of facts surrounding the DAPL protest activity, including Pyramid Communications' efforts assisting individuals or groups associated with the protests with communications strategies.

vii. Red Fawn Fallis
Protestor
Register Number: 16358-059
RRM Minneapolis
200 S. 4th St. Suite 1210
Minneapolis, MN  55415

Upon information and belief, Ms. Fallis would have knowledge of facts surrounding the DAPL protest activity and potentially criminal activity stemming from protests.

viii. Sofia Wilansky
Protestor
c/o Edward C. Barnidge, Benjamin M. Stoll (Counsel)
Williams & Connolly LLP
725 Twelfth Street Northwest
Washington, DC 20005
(202) 434-5000

Upon information and belief, Ms. Wilansky would have knowledge of facts surrounding the DAPL protest activity and potentially criminal activity stemming from protests.

ix. Mark Fiefel
Protester
*After a reasonable search, Mr. Fiefel's contact information was not able to be discerned. Plaintiff will supplement this disclosure upon locating Mr. Fiefel's contact information.*

Upon information and belief, Mr. Fiefel would have knowledge of facts surrounding the DAPL protest activity and potentially criminal activity stemming from protests.

x. David & Brenda Meyer
Landowners
68 6th Ave E
Flasher, ND 58535
(701) 597-3328

Upon information and belief, Mr. and Ms. Meyer would have documentation and have knowledge of facts surrounding the DAPL

13

        protest activity, potentially unlawful activity stemming from protests, and protesters' destruction of property.

    xi. Julie Ellingson
        Vice President of the North Dakota Stockmen's Association
        407 S 2nd St,
        Bismarck, ND 58504
        (701) 223-2522

        Upon information and belief, Ms. Ellingson would have documentation and have knowledge of facts surrounding the DAPL protest activity, potentially unlawful activity stemming from protests, and protesters' destruction of property.

2. **Rule 26(a)(1)(A)(ii) – a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.**

The following categories of documents are or may be relevant to disputed facts alleged with particularity in the pleadings and are in the possession, custody and control of North Dakota:

a. North Dakota Department of Emergency Services electronic materials during the time period covered by the Complaint including:

    i. Correspondence with North Dakota Law Enforcement Agencies, USACE officials, and federal agencies including the BIA, FBI, and US Attorneys;

    ii. Law enforcement incident sign out logs;

    iii. Maps, meeting agendas, reports;

    iv. Emails;

    v. ND State and Local Intelligence Center Files;

    vi. After action improvement plans;

    vii. Press releases;

b. Governor's office materials electronic materials during the time period covered by the complaint including:

    i. Emails;

    ii. Status memoranda;

      iii. Public Information Officer communications, emails, and memoranda;

      iv. Communications with Congressional Offices including Unites States Senator John Hoeven, United States Senator Heidi Heitkamp and United States Representative Kevin Cramer.;

c. Law Enforcement Materials from the Morton County Sheriff's Department, North Dakota State's Attorney Offices; North Dakota National Guard; Emergency Management Assistance Compact State Law Enforcement Personnel, Air National Guard, Army National Guard, Adjutant General, Attorney General (including the Bureau of Criminal Investigation), Bank of North Dakota, Department of Corrections and Rehabilitation, Division of Homeland Security, North Dakota Forest Service, Game and Fish, Health Department, North Dakota Highway Patrol, State Historical Society of North Dakota, Department of Human Services, Indian Affairs Commission, Information Technology Department, Parks and Recreation Department, Parole and Probation, Public Service Commission, the State and Local Intelligence Center, State Radio, Transportation Department and State Water Commission including:

      i. Intelligence folders including social media pictures, screenshots, and imaging;

      ii. Arrest Reports;

      iii. Dakota Access Pipeline Permitting and Litigation files;

      iv. Interviews from protest incidents;

      v. Photos and videos of the protest areas and protestors;

      vi. Maps of the protest areas;

      vii. Media reports;

      viii. Officer go pro videos;

      ix. Drone videos;

      x. Overhead flight videos;

      xi. Daily OPORD Reports;

      xii. Transcripts of depositions;

      xiii. BCI Reports;

      xiv. Private Security licensing/contracts;

      **xv.** Email Communications;

> **3.    Rule 26(a)(1)(A)(iii) – a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered:**

North Dakota has alleged damages totaling $38,005,071.66, as modified by damages provided for in accordance with the law of North Dakota. This figure includes:

1. Payroll ($6,422,757.05): This sum includes payroll for state employees such as National Guard members that were called to service from inactive duty, temporary employees hired to respond to the DAPL protests, and overtime for existing employees of the State for their overtime work on the protests. It does not include regular payroll costs for full-time State employees who also worked on responding to the crisis.

2. Travel ($2,799,478.47): This sum includes travel costs (*i.e.*, gas and mileage) for National Guard members from their homes to command centers to the DAPL protest locations. It also includes travel costs for employees of the Department of Emergency Services who used their personal vehicles to travel to the DAPL protest locations.

3. Equipment ($3,201,650.75): This sum includes necessary supplies that North Dakota needed to respond to the protests, such as dump trucks, physical security barriers, cold weather gear, and rentals to stock facilities. It also includes damage to state property such as law enforcement vehicles and repair work for damage to the Backwater Bridge during the protests. It does not include standard equipment costs that North Dakota would have incurred during the normal course of State operations.

4. Emergency Management Assistance Compact Funds ($4,045,088.39). Eleven states came to North Dakota's aid to assist responding to the DAPL protests pursuant to the Emergency Management Assistance Compact. This Compact compels North Dakota to reimburse these for expenses assisting North Dakota respond to an emergency. These expenses include lodging, meals, and travel prorated for the time that the responders were assisting North Dakota. It also includes any incidental loss from damage to other states' property.

5. North Dakota Mutual Aid ($12,385,795.98). Personnel from political subdivisions of North Dakota, such as local law enforcement from across the State, provided support for responding to the DAPL protests. Their expenses include payroll for specifically responding to the DAPL protests, overtime, and travel expenses. They also include damage to vehicles and equipment owned by these subdivisions.

6. State Agencies Assistance ($8,348,350.31). Personnel from additional state agencies, such as the Highway Patrol, Department of Transportation, Department

of Correction, and Health Department, provided support for responding to the DAPL protests. Their expenses include payroll for specifically responding to the DAPL protests, overtime, and travel expenses.

7.  <u>Interest ($801,950.71).</u> To meet the needs of the response to the DAPL protests, the State was compelled to take out a loan from the Bank of North Dakota. This loan had an interest requirement. To the date of filing North Dakota's Notice of Claim, it has accrued $801,950.71 in interest from this loan required to respond to the DAPL protests.

Plaintiff will make available to Defendant for inspection the voluminous records supporting these damages. Plaintiff reserves the right to supplement the figures calculated for its damages total if new information regarding damages comes to light.

Dated: April 4, 2022                                           Sincerely,

WAYNE STENEHJEM
ATTORNEY GENERAL

/s/ Paul M. Seby
Paul M. Seby
Special Assistant Attorney General
Greenberg Traurig, LLP
1144 15th St, Suite 3300
Denver, CO 80202
Phone: (303) 572-6584
Email: sebyp@gtlaw.com

Matthew Sagsveen
Solicitor General
500 N. 9th Street Bismarck, ND 58501
Phone: (701) 328-2595
Email: masagsve@nd.gov

COUNSEL FOR PLAINTIFF
STATE OF NORTH DAKOTA

17