# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE OF NORTH DAKOTA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) | Case No. 19-cv-150-DMT-ARS |

**SUPPLEMENTATION OF THE DEPOSITION OF THE UNITED STATES REGARDING THE DEPARTMENT OF THE INTERIOR PURSUANT TO SECOND AMENDED NOTICE OF DEPOSITION**

The United States submits this supplementation to the deposition of the Department of the Interior (DOI) taken on December 7, 2022.

These responses are provided only on behalf of DOI.

**Preparation taken to respond**

To respond to these questions, DOI took the following steps:

- Agency counsel searched DOI email databases for emails regarding the Joint Statements mentioned in Topic 21.

- The U.S. Attorney's Office for the District of Colorado searched its database of documents produced in this litigation for documents regarding the Joint Statements mentioned in Topic 21 as they related to DOI.

- The depositions of Darren Cruzan and Jason O'Neal were reviewed by the U.S. Attorney's Office for the District of Colorado.

1

**Questions provided by the State on December 9, 2022, regarding Topic 21**

*September 9, 2016 Joint Statement*

a)     Who was involved in writing the Sept. 9, 2016 Joint Statement?

A:     Objection, vague; it is not clear what question means by "involved in writing." Subject to that objection, the following DOI employees reviewed the September 9, 2016 Joint Statement: Hilary Tompkins (DOI Solicitor), Tommy Beaudreau (Chief of Staff), Michael Connor (Deputy Secretary), Larry Roberts (Principal Deputy Assistant Secretary – Indian Affairs), and Blake Androff (Director of Communications).  (Of those people, only Tommy Beaudreau is currently a DOI employee.)  The following describes the specific steps those persons took to convey comments from DOI to others outside of DOI:
     Androff, on September 8, 2016, provided comments to Wyn Hornbuckle of the Department of Justice with a suggestion that the text in the paragraph that appears in the final version of the September 9, 2016 Joint Statement starting with "Furthermore," be condensed and made more basic.  The final version does not reflect any changes as a result of Androff's suggestion.
     Tompkins, on behalf of DOI, approved of the draft Joint Statement send by Sam Hirsch on September 9, 2016, at 10:02 am.[1]
     Nobody else at DOI communicated DOI comments to persons outside of DOI regarding the September 9, 2016 Joint Statement.

b)     Who drafted this Joint Statement?

A:     Objection, vague; it is not clear what the question means by "drafted."  The response to (a), above, details the specific steps DOI personnel took to convey comments from DOI to others outside of DOI.

c)     When was it initially created?  When was first draft written?  By whom?

A:     DOI first received a draft of what would become the September 9, 2016 Joint Statement from Sam Hirsh on September 7, 2016, at 3:56 pm.

d)     Whose idea was it to prepare this Joint Statement?

A:     DOI does not know.

e)     Who was involved in reviewing and commenting it?

A:     As for DOI, see the response to (a).

f)     Who approved the Joint Statement for public release?

A:     Tompkins.

---

[1] Dates and times are taken from email headers.

g)       Explain the process by which the Joint Statement was created?

        A:     Please see the responses to (a) and (c). .

h)       What aspects of the protests were considered or factored into the Joint Statement before it was publicly issued?

        A:     Objection, vague; it is not clear what is meant by "what aspects of the protests." Subject to that objection, as stated in the September 9, 2016 Joint Statement, DOI considered the First Amendment rights of protestors, the need for any protests to be peaceful, and public safety. DOI also considered the information about the DAPL protests that Darren Cruzan conveyed to DOI leadership.

i)       Did anyone involved in preparing this Joint Statement disagree with its contents?

        A:     Objection, vague; it is not clear what is meant by "involved in preparing" and "disagree with its contents." Objection to the extent it calls for attorney-client privileged and attorney-work-product information. Subject to those objections, no one at DOI disagreed with the contents of the September 9, 2016 Joint Statement.

j)       Did anyone express concerns that it would increase the size, intensity or duration of the protests?

        A:     None at DOI.

k)       Was Col. Henderson or Gen. Spellmon consulted in the development of the Joint Statement before it was publicly released? If not, why not?

        A:     Objection, vague; it is not clear what is meant by "consulted in the development." Subject to that objection, DOI did not consult with them. DOI assumed that the Army would have done any consultations within its agency that it considered necessary.

l)       Was anyone else from the Corps consulted on the Joint Statement before it was issued? Who? If not, why not?

        A:     Objection, vague; it is not clear what is meant by "consulted." Subject to that objection, DOI did not consult with anyone else in the Corps. DOI assumed that the Army would have done any consultations within its agency that it considered necessary.

m)      Was any version of a draft of the Joint Statement shared with any person(s) outside of the three Joint Statement agencies?

        A:     Not by DOI.

n)  Did you consider the ongoing DAPL protests (the intensity, size, etc.) before issuing this Joint Statement? If you did, how were the ongoing DAPL protests considered? Who did you speak with to understand what was going on out at the DAPL protests prior to public release of the Joint Statement?

   A:   Yes. DOI considered all information it had regarding the DAPL protests. DOI leadership involved in considering the September 9, 2016 Joint Statement had received information from Cruzan about the DAPL protests.

o)  What was the intent in issuing this Joint Statement?

   A:   To communicate the information contained in the September 9, 2016 Joint Statement and to deescalate the tensions surrounding the DAPL protests.

p)  Do you agree that the Dept. of Justice had advance notice (24 hours) of the date of the Court's (U.S. District Judge Boasberg) ruling?

   A:   DOI does not have information to agree or disagree.

q)  Was the Sept. 9, 2016 Joint Statement was prepared prior to release of the Court's ruling?

   A:   Yes.

r)  Were two drafts of the eventual Sept. 9, 2016 Joint Statement prepared, one in support of a ruling against the Corps and the one that was ultimately released?

   A:   Yes.

s)  What was the intended effect of the Sept. 9, 2016 Joint Statement?

   A:   See response to (o).

t)  Did it have the intended effect?

   A:   As to the first purpose, yes. As to the second purpose, DOI does not know, because it has not conducted any rigorous analysis, but it infers that the statement did have the intended effect based on the absence of increased violence in the immediate aftermath of the Joint Statement.

u)  Sept, 9, 2016 Joint Statement, fourth paragraph – last sentence - DOJ and DOI will continue to deploy resources to North Dakota… Identify what resources were provided by DOJ and DOI to North Dakota?

   A:   Mr. O'Neal identified DOI resources provided to and in the State of North Dakota in the 30(b)(6) deposition of DOI.

4

v)   Do you agree that the Dept. of Army did not provide any resources? And that this included the USACE? If not, then why wasn't that included in the Sept. 9, 2016 Joint Statement that Army would continue to provide resources?

   A:   DOI does not know what resources, if any, the Department of the Army provided and so does not have information to answer this question.

w)   Why wasn't the non-peaceful protests actions addressed in the Joint Statement?

   A:   DOI does not agree that non-peaceful protest actions were not addressed in the September 9, 2016 Joint Statement. See the September 9, 2016 Joint Statement, second sentence of the paragraph starting "Finally."

x)   Why not include language to discourage the violence? To support state and local law enforcement?

   A:   DOI does not agree that the September 9, 2016 Joint Statement did not include language to discourage violence. See the last two paragraphs of the September 9, 2016 Joint Statement. DOI believes that the September 9, 2016 Joint Statement did support state and local law enforcement. See the paragraph that starts "Finally."

y)   Was anyone from North Dakota consulted about the contents of the Joint Statement before it was released? Who? How?

   A:   Objection, vague; it is unclear what is meant by "consulted" and "anyone from North Dakota." Subject to that objection, DOI did not consult anyone employed by the state of North Dakota about the contents of the Joint Statement prior to its release.

z)   Do you agree that the Joint Statement was supportive of the DAPL protestors?

   A:   Objection, vague; it is unclear what is meant by "supportive." Subject to that objection, the Joint Statement states that the agencies supported the First Amendment rights of the protestors but also cautioned that violence or destruction could lead to criminal sanctions. See the paragraph that starts "Finally."

aa)   Do you agree that the Joint Statement was encouraging to the DAPL protestors?

   A:   Objection, vague; it is unclear what is meant by "encouraging." Subject to that objection, see response to (z).

bb)   Why did the Joint Statement contain no mention of state or local law enforcement to support them?

   A:   DOI does not agree that the September 9, 2016 Joint Statement does not mention state or local law enforcement. They are mentioned in the paragraph starting "Finally."

### *October 10, 2016 Joint Statement*

a) Who was involved in writing the Oct. 10, 2016 Joint Statement?

A: Objection, vague; it is not clear what question means by "involved in writing." The following DOI employees reviewed the October 10, 2016 Joint Statement: Hilary Tompkins (DOI Solicitor), Tommy Beaudreau (Chief of Staff), Larry Roberts (Principal Deputy Assistant Secretary – Indian Affairs), and Jessica Kershaw (Deputy Director of Communications). (Of those people, only Tommy Beaudreau is currently a DOI employee.) The following describes the specific steps those persons took to convey comments from DOI to others outside of DOI:

Kershaw, on October 9, 2016, reported to Wyn Hornbuckle that DOI had no concerns with the drafts as then written. On October 10, 2016, at 11:59 am, she reported to Hornbuckle that DOI requested an addition to the then-current draft related to respecting people's right to peacefully protest. That addition appeared in the final statement in the part that starts, "We continue to …." On October 10, 2016, at 1:45 p.m., she reported to Hornbuckle that DOI requested an edit to the then-current draft to replace the word "shortly" with "soon." That edit appeared in the final statement in the part that starts, "The Army continues to ...."

Kershaw, on behalf of DOI, approved of the final October 10, 2016, Joint Statement.

Nobody else at DOI communicated DOI comments to persons outside of DOI regarding the October 10, 2016 Joint Statement.

b) Whose idea was it to prepare this Joint Statement?

A: DOI does not know.

c) When was it initially created? When was first draft written?

A: DOI first received a draft of what would become the October 10, 2016 Joint Statement from Hornbuckle on October 8, 2016, at 10:21 am.

d) Who drafted this Joint Statement?

A: Objection, vague; it is not clear what the question means by "drafted." The response to (a), above, details the specific steps DOI personnel took to convey comments from DOI to others outside of DOI.

e) Explain the process by which it was prepared?

A: Please see the responses to (a) and (c).

f) Who was involved in reviewing this Joint Statement?

A: As for DOI, see (a).

g) Who approved the Joint Statement for release?

      A:    As for DOI, Kershaw.

h) What aspects of the DAPL protests were considered or factored into the before this Joint Statement was issued?

      A:    Objection, vague; it is not clear what is meant by "what aspects of the DAPL protests." Subject to that objection, as stated in the Joint Statement, DOI considered the First Amendment rights of protestors, the need for any protests to be peaceful, and public safety. DOI also considered the information about the DAPL protests that Darren Cruzan conveyed to DOI leadership.

i) Did anyone involved in preparing this Joint Statement disagree with its contents? If so, who? What was the disagreement?

      A:    Objection, vague; it is not clear what is meant by "involved in preparing" and "disagree with its contents." Objection to the extent it calls for attorney-client privileged and attorney work product information. Subject to those objections, no one at DOI disagreed with the contents of the October 10, 2016 Joint Statement.

j) Did anyone express concerns that it would increase the intensity or duration of the DAPL protests?

      A:    None at DOI.

k) Was Col. Henderson or Gen. Spellmon consulted before this Joint Statement was released?

      A:    Not by DOI.

l) Was anyone else from the Corps consulted? Who? If not, why not?

      A:    Objection, vague; it is not clear what is meant by "consulted." Subject to that objection, DOI did not consult with anyone else in the Corps. DOI assumed that the Army would have done any consultations within its agency that it considered necessary.

m) What was the intent to issue the October 10, 2016 Joint Statement?

      A:    To communicate the information contained in the October 10, 2016 Joint Statement and to deescalate the tensions surrounding the DAPL protests.

n) Was that intent fulfilled?

      A:    As to the first purpose, yes. As to the second purpose, DOI does not know, because it has not conducted any rigorous analysis, but it infers that the statement did have the intended effect based on the absence of increased violence in the immediate aftermath of the Joint Statement.

o) Why wasn't the non-peaceful protests actions addressed in the Joint Statement?

A: DOI does not agree that non-peaceful protest actions were not addressed in the October 10, 2016 Joint Statement. See "expect people to obey the law."

p) Why not include language to discourage the violence? To support state and local law enforcement?

A: DOI does not agree that the October 10, 2016 Joint Statement did not include language to discourage violence. See "expect people to obey the law." As for the second question, DOI did not believe that the October 10, 2016 Joint Statement was intended to be a complete statement of its position vis-à-vis the DAPL protest generally or its support of state and local law enforcement in particular.

q) Was anyone from North Dakota consulted about the contents of the Joint Statement before it was released?

A: Objection, vague; it is unclear what is meant by "consulted" and "anyone from North Dakota." Subject to that objection, DOI did not consult anyone employed by the state of North Dakota about the contents of the October 10, 2016 Joint Statement prior to its release.

r) Did you consider the ongoing protests (the intensity, size, etc.) before issuing this Joint Statement? If you did, how was the ongoing protests considered? Who did you speak with to understand what was going on out at the protests prior to release of the Joint Statement?

A: Yes. DOI considered all information it had regarding the DAPL protests. DAPL leadership involved in considering the October 10, 2016 Joint Statement had been briefed by Darren Cruzan.

s) Do you agree that the Joint Statement is supportive of the protestors?

A: Objection, vague; it is unclear what is meant by "supportive." Subject to that objection, the Joint Statement states "We continue to respect the right to peaceful protest and expect people to obey the law."

t) Why was there no mention of state or local law enforcement to support them?

A: DOI did not believe that the October 10, 2016 Joint Statement was intended to be a complete statement of its position vis-à-vis the DAPL protest generally or its support of state and local law enforcement in particular.

I declare under penalty of perjury under 28 U.S.C. § 1746, that the foregoing is true and correct based on information known or reasonably available to DOI.

Dated: December 19th, 2022

ANTHONY IRISH
Digitally signed by ANTHONY IRISH
Date: 2022.12.19 14:01:45 -05'00'

_____
Anthony C. Irish
Assistant Solicitor
Division of General Law
U.S. Department of the Interior

## CERTIFICATE OF SERVICE

      I hereby certify that on December 19, 2022, I sent the foregoing to counsel for Plaintiff, Paul Seby at sebyp@gtlaw.com and Paul Kerlin at kerlinp@gtlaw.com.

*s/ Timothy B. Jafek*
Timothy B. Jafek
