IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| State of North Dakota,<br><br>                              Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>                             Defendant. | Civil No.: 1:19-cv-00150 |

**ORDER DENYING MOTIONS *IN LIMINE***

**INTRODUCTION**

[¶1]    THIS MATTER comes before the Court upon two Motions *in Limine* filed by the United States on January 12, 2024. Doc. Nos. 387, 389. The United States asks the Court to exclude the testimony of expert witnesses Katherine Kuhlman ("Dr. Kuhlman") (Doc. No. 387) and Ronald I. Tolstad, Jr. ("Tolstad") (Doc. No. 389) under Rule 702 of the Federal Rules of Evidence. North Dakota filed Responses on January 26, 2024. Doc. Nos. 396, 397. The United States filed Replies on February 2, 2024. Doc. Nos. 407, 408. For the reasons set forth below, each Motion *in Limine* is **DENIED**.

**DISCUSSION**

    **I.**    **Standards for Rule 702 of the Federal Rules of Evidence**

[¶2]    Rule 702 of the Federal Rules of Evidence sets forth the standard for expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely true than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 was recently "amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that is is more likely true than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 701, 2023 Amendments. Rule 702 requires that the trial judge act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). The trial court is given broad discretion in its determination of relevance and reliability. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 142 (1999); Olson v. Ford Motor Co., 481 F.3d 619, 626 (8th Cir. 2007). "However, Daubert is meant to 'protect *juries* from being swayed by dubious scientific testimony." David E. Watson, P.C. v. United States, 668 F.3d 1008, 1015 (8th Cir. 2012) (emphasis in original) (quoting In re Zurn Pex Plumbing Prods. Liab. Litig., 664 F.3d 604, 613 (8th Cir. 2011)). Indeed, "[w]hen the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." Id. (cleaned up). Accordingly, courts apply a relaxed analysis under Daubert at bench trials. Id.

[¶3]    "Rule 702 does not permit a judge to weigh conflicting expert testimony, admit the testimony that he or she personally believes, and exclude the testimony that he or she does not personally believe." Olson, 481 F.3d at 626. "Nor does Rule 702 permit a judge to exclude expert testimony just because it seems doubtful or tenuous." Id. "The Supreme Court has been clear about how infirmities in expert testimony should be exposed: 'Vigorous cross-examination, presentation

of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Id. (quoting Daubert, 509 U.S. at 596).

[¶4]   "Questions of an expert's credibility and the weight accorded to his testimony are ultimately for the trier of fact to determine." Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1183 (8th Cir. 1997) (citing Fox v. Dannenberg, 906 F.2d 1253, 1256 (8th Cir. 1990)). "Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Id. (citing Hose v. Chicago Nw. Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995)). The Eighth Circuit Court of Appeals has established three prerequisites that must be satisfied for expert testimony to be admitted under Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (cleaned up).

## II.   Dr. Katherine Kuhlman

[¶5]   The United States moves to exclude the expert testimony of Dr. Kuhlman. According to the report, she was asked to evaluate and opine on two matters:

> (1) whether the United States (U.S.) government invited, encouraged, and supported protestors of the Dakota Access Pipeline (DAPL) to be and remain in the DAPL protests, and (2) if the actions of the U.S. government increased the resolve of the protestors and their perceived legitimacy for their protest actions.

Doc. No. 388-1, p. 2. In reviewing these two questions under the Reinforcement Theory, which was initially proposed by B.F. Skinner in 1938. Id. at p. 5. According to the report, this theory "has since become one of the most-researched and supported theories of human behavior" and is "one

of the best theories of motivation that explains behavior and how one acts, behaves, and learns." Id. According to Dr. Kuhlman's report, Reinforcement Theory "surmises that an individual's behavior is a function of consequences, and that behavior can be shaped by controlling the consequences of the behavior." Id. Dr. Kuhlman gives a detailed explanation of the fundamentals of Reinforcement Theory. Id. at pp. 5-6.

[¶6]   As to the first question, Dr. Kuhlman concluded:

> It is my opinion that the actions of the U.S. Government invited, encouraged, and supported protestors to be in and remain at the DAPL protest. Reinforcement theory states that when a desirable result (in this case, tacit and overt support from the federal government and construction being put on pause) follows a behavior (in this case, protesting), that behavior is more likely to occur in the future. The federal government engaged in overt and implicit support in various ways, which provided positive reinforcement for protests to continue despite the threats to public safety and the safety of the protestors.

Id. at p. 6 (internal citation omitted). As to the second question, Dr. Kuhlman concluded:

> [I]t is my opinion that the actions of the federal government increased the resolve of the protestors and their perceived legitimacy for their protest. Again, this opinion is supported by reinforcement theory. When protesters were encouraged by the federal government to believe that their cause was just and that the associated illegal conduct would not have adverse consequences, they were emboldened, engaged in aggressive and violent behavior, and their numbers increased.

Id. at p. 14. In arriving at these conclusions, Dr. Kuhlman explains she reviewed 15 depositions, significant materials documenting the DAPL protests and protestor actions, including after action reports, photos and videos of the DAPL protest events, and news articles written about the protests. Doc. No. 397-1, ¶ 13.

[¶7]   The United States argues North Dakota has not met its burden to show that Dr. Kuhlman's opinions are based on sufficient data. In making this argument, the United States avers Dr. Kuhlman only reviewed depositions of two protestors, even though there were a significant number of protestors who were at the DAPL protest for various reasons. The United States also

contends she had no way of determining how individuals weighed the various, potentially competing, reinforcements present in this case. The United States claims North Dakota has not met its burden to show Dr. Kuhlman's opinions are reliable because there is too great of an analytical gap between the data and opinions offered. The United States argues the application of Reinforcement Theory here, after reviewing only two protestor's depositions, cannot be used to generalize the thousands of protestors coming from a wide variety of backgrounds. The United States also claims Dr. Kuhlman failed to weigh the Reinforcement Theory factors. Next, the United States contends the State failed to show how her opinions establish causation. Finally, the United States argues Dr. Kuhlman's opinions are neither relevant nor useful.[1]

[¶8]   North Dakota disagrees with the United States and argues Dr. Kuhlman properly applied Reinforcement Theory. In arguing this, North Dakota points to Dr. Kuhlman's deposition in which she testified Reinforcement Theory can be applied "for the diversity in a large group of people." Doc. No. 397, p. 10 (quoting Doc. No. 388-2, p. 39:19-21). According to North Dakota, Dr. Kuhlman's admission reviewing more depositions of DAPL protestors would have been "optimal" but that does not negate her application of the Reinforcement Theory. North Dakota next argues Dr. Kuhlman's opinions relating to causation should be admissible because they help establish how the United States either encouraged or contributed to the protests. Finally, North Dakota

---

[1] The United States suggests Dr. Kuhlman's opinions are irrelevant because she opines as to the actions of United States officials' conduct rather than just the conduct of the Army Corps of Engineers' officers' conduct. In discussing the scope of discovery, the Court found other federal agencies may have contributed to the damages suffered by North Dakota, thus permitting North Dakota to engage in discovery of those other agencies. Doc. No. 280, ¶ 15 ("The liability of the United States in this matter flows directly from the USACE's actions, not the actions of the other agencies. But the other agencies may have contributed to the damages suffered by North Dakota and are, therefore, relevant for discovery and potential recovery."). The same logic applies here. Dr. Kuhlman's conclusions relating federal officials generally is supported because those officials' conduct may also have contributed to North Dakota's damages, as previously found by the court. See id.

argues Dr. Kuhlman's expert opinions are relevant to North Dakota's emergency response costs because they touch directly on the central issue of this case: whether the Corps' actions invited and encouraged protestor and their unlawful behavior such that the Corps should be liable under North Dakota law. The Court agrees with North Dakota.

[¶9]    The Court has reviewed the record relating to this Motion and concludes it is more likely true than not true that Dr. Kuhlman's opinions were based on sufficient data and are reliable. See Fed. R. Evid. 702. She reviewed a significant number of documents. She meticulously described Reinforcement Theory and how it directly applies to the circumstances of this case. Even though the number of protestor depositions she reviewed was two, there are more factors to consider than simply the effect the United States' actions had on the protestors, as documented in Dr. Kuhlman's report. The Court further finds it is more likely true than not that her opinions are relevant and useful. Id. Her opinions directly relate to the heart of this case, namely, the Corps' involvement in encouraging and promoting the unlawful protest activities at the DAPL site. While her opinions do not directly state the United States' actions were the sole cause of the protest activities, they will assist the Court in determining the how much the United States' actions contributed to the unlawful protests and resulting damages North Dakota seeks in this case.

[¶10]   Having made these conclusions, the Court notes it does not comment on the weight or credibility associated with her findings. The United States is free to raise these same arguments to discredit the weight and credibility the Court ought to give to her opinions. See Olson, 481 F.3d at 626 ("The Supreme Court has been clear about how infirmities in expert testimony should be exposed: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting Daubert, 509 U.S. at 596)).  But the fact of the matter is Dr. Kuhlman's

opinions are, by a preponderance of the evidence, admissible under Rule 702. See Fed. R. Evid. 702, 2023 Amendments (noting the standard for admissibility under Rule 702 "is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules."). The Court will give them due consideration at trial. Accordingly, the United States Motion *in Limine* to exclude the expert testimony of Dr. Kuhlman (Doc. No. 387) is **DENIED**.

### III. Ronald Tolstad

[¶11] The United States ask the Court to exclude the expert testimony of Ronald Tolstad. Tolstad was asked by North Dakota to provide expert testimony on two questions:

1. Did the State of North Dakota follow its existing policies and procedures related to the accounting expenditures attributable to the emergency response costs for the Dakota Access Pipeline (DAPL) protest?
2. Are interest rates charged by the Bank of North Dakota for DAPL related emergency response costs loans reasonable?

Doc. No. 390-3, p. 3. As to the first question, Tolstad reviewed records, documents, and interviews with North Dakota officials, and concluded "North Dakota followed its existing policies and procedures related to the accounting for expenditures attributed to the emergency response costs for the DAPL protest." Id. at p. 4. He further concluded the costs were properly documented and approved under North Dakota procedures. Id. Tolstad provided a detailed explanation of his process and what he reviewed. Id. at pp. 4-13. As to the second question, Tolstad also reviewed records, documents, and interviews with North Dakota officials and concluded "DAPL loan interest rates are reasonable and comparable with loans made to other state agencies by the Bank of North Dakota." Id. at p. 13. Tolstad provided a detailed explanation of his process and what he reviewed in making this conclusion. Id. at pp. 13-16.

[¶12]   The United States only challenges the relevancy and usefulness of this testimony. The United States does not dispute whether North Dakota complied with its policies and procedures in accounting for its costs. The United States also claims it does not dispute the loans from the Bank of North Dakota were reasonable.

[¶13]   North Dakota argues Tolstad's testimony is both relevant and useful in determining North Dakota's damages because Tolstad's testimony did not accept the valuation as true. Tolstad inspected the documents and interviewed individuals who had the authority to approve the expenditures. He also reviewed the results of an audit conducted by the State Auditor of North Dakota. In short, Tolstad independently confirmed the damages amount, which is relevant and useful to North Dakota's proof of damages. North Dakota also argues Tolstad's opinions relating to the loan interest rate are relevant and useful in determining North Dakota's damages. The Court agrees with North Dakota.

[¶14]   The Court has reviewed the record relevant to this Motion *in Limine* and concludes it is more likely true than not that the information provided in the report and its conclusions will be both relevant and useful. See Fed. R. Evid. 702. The calculations and opinions provided help establish the reliability of the method of damages calculation as well as the loan interest. The opinions also help establish a basis for the reasonableness of the costs, which is part of North Dakota's burden of proof. Although they may not be disputed, the information will be relevant and useful for North Dakota to prove its case.

[¶15]   Having made these conclusions, the Court notes it does not comment on the weight or credibility associated with Tolstad's findings. The United States is free to raise these same arguments to discredit the weight and credibility the Court ought to give to Tolstad's opinions. See Olson, 481 F.3d at 626 ("The Supreme Court has been clear about how infirmities in expert

testimony should be exposed: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting Daubert, 509 U.S. at 596)). Nevertheless, Tolstad's opinions are, by a preponderance of the evidence, admissible under Rule 702. See Fed. R. Evid. 702, 2023 Amendments (noting the standard for admissibility under Rule 702 "is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules."). The Court will give them due consideration at trial. Accordingly, the United States Motion *in Limine* to exclude the expert testimony of Tolstad (Doc. No. 389) is **DENIED**.

## CONCLUSION

[¶16]  Based upon the foregoing, the United States' Motions *in Limine* (Doc Nos. 387, 389) are **DENIED**.

[¶17]  **IT IS SO ORDERED.**

DATED February 8, 2024.

Daniel M. Traynor, District Judge
United States District Court