UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE OF NORTH DAKOTA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 1:19-cv-00150-DMT-ARS |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**JOINT MOTION FOR INDICATIVE RULING UNDER RULE 62.1(a)(3)
TO VACATE JUDGMENT UNDER RULE 60(b)**

As a condition of a tentative settlement agreement, the United States of America and the State of North Dakota (the Parties) jointly move the Court for an indicative ruling under Federal Rule of Civil Procedure 62.1(a)(3) and ask that the Court indicate its willingness to vacate the judgment in this case, Dkt. No. 454, as well as the order denying the United States' motion to dismiss, Dkt. No. 38; the order denying the United States' motion for summary judgment, Dkt. No. 383; and the Court's findings of fact and conclusions of law, Dkt. No. 453. In support of that motion, the Parties state as follows:

**BACKGROUND**

This lawsuit was brought by the State of North Dakota under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), regarding protests that were associated with construction of the Dakota Access Pipeline (DAPL) in late 2016 and early 2017. North Dakota alleged that the U.S. Army Corps of Engineers unlawfully facilitated those protests, causing the State to incur more than $37 million in costs associated with State law enforcement's response to the protests and subsequent clean-up. This Court ultimately found that the United States was liable under the FTCA and awarded the State more than $27 million in damages. *See* Dkt. No. 453, at 113-16.

The United States filed a timely notice of appeal of the Court's judgment, and the case is currently pending before the Eighth Circuit. Among the many questions presented in this case that could be presented on appeal are: (1) whether the United States had sovereign immunity based on the discretionary function exception to the FTCA, *see* 28 U.S.C. § 2680(a); and (2) the standards of care under North Dakota law that applied to the United States' conduct and whether the United States breached those standards of care, *see id.* §§ 1346(1), 2674.

Following this Court's judgment and the United States' notice of appeal, the Parties engaged in good faith negotiations regarding the possibility of a settlement that would bring this matter to final resolution without the continued expenditure of time and resources. The Parties have tentatively been able to reach mutually agreeable terms for bringing this matter to final resolution, and, as discussed further *infra*, the Parties believe settlement of this litigation would be in the public interest. However, one essential condition of that settlement is that this Court vacate its judgment, Dkt. No. 454, as well as the underlying order denying the United States' motion to dismiss, Dkt. No. 38; the order denying the United States' motion for summary judgment, Dkt. No. 383; and the Court's findings of fact and conclusions of law, Dkt. No. 453.

Because the Court lacks jurisdiction to grant any such relief while this case is on appeal, the Parties respectfully ask the Court to issue an indicative ruling under Rule 62.1(a)(3) indicating it would grant such relief if jurisdiction were returned to the Court for that purpose. If the Court indicates that it would grant such relief, the Parties will request remand from the Eighth Circuit for that purpose. *See* Fed. R. App. P. 12.1(a); Fed. R. Civ. P. 62.1(c). If the judgment and underlying orders are vacated, the United States will effectuate the terms of the settlement and promptly seek to voluntarily dismiss its appeal, thereby ending this litigation.

## STATEMENT OF LAW AND ARGUMENT

**1. Indicative Ruling Under Rule 62.1(a)(3).**

This Court does not presently have jurisdiction to vacate its judgment or the underlying orders because the case has been timely appealed to the Eighth Circuit. *E.g.*, *FutureFuel Chem. Co. v. Lonza, Inc.*, 756 F.3d 641, 648 (8th Cir. 2014) ("Once a notice of appeal is filed, the district court is divested of jurisdiction over matters on appeal") (quotations omitted). In such circumstances, however, Rule 62.1(c) of the Federal Rules of Civil Procedure allows a party to ask the district court to "issue an indicative ruling" signaling that it "will grant" a motion "if the Eighth Circuit remands for that purpose." *Goyette v. Hutchinson*, No. 20-cv-1302, 2024 WL 3402738, at *1 (D. Minn. July 11, 2024) (granting indicative ruling). Rule 62.1(b) requires the moving party to promptly notify the court of appeals if the district court indicates it would grant such a motion.

If this Court indicates that it would grant such a motion were jurisdiction to be returned for that purpose, the federal rules then permit the Eighth Circuit to "'remand [the] case for further proceedings,'" while still "retain[ing] jurisdiction over the appeal during this limited remand." *Goyette v. Does, 1-2*, No. 23-3190, 2024 WL 3574571, at *1 (8th Cir. July 30, 2024) (per curiam) (unpublished) (citation omitted); *see also* Fed. R. App. P. 12.1(a); 28 U.S.C. § 2106; *Foster v. Cerro Gordo Cnty.*, 697 F. App'x 484, 485 (8th Cir. 2017) (per curiam) (unpublished).

For the reasons that follow, the parties respectfully ask this Court to indicate that it would—in the event of a limited remand for that purpose—grant the Parties' joint motion to vacate the Court's judgment and underlying orders (Dkt. Nos. 38, 383, 453, 454).

**2. Vacatur Due to Settlement Under Rule 60(b).**

Under Federal Rule of Civil Procedure 60(b)(6), a district court has broad authority to provide relief from a judgment "whenever such action is appropriate to accomplish justice."

*Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357, 360 (8th Cir. 1994) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)). "[T]he determination [whether to grant vacatur] is an equitable one." *Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 (8th Cir. 2015) (citation omitted). "And it will depend heavily on the circumstances involved in each case." *Id.*

Vacatur due to settlement is not automatic, nor is it a right held by any party. *See generally U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25-27 (1994) (denying an opposed motion for vacatur due to mootness that was caused by settlement). Rather, under *Bancorp*, vacatur due to settlement is a question of equitable relief that requires the Court to consider and weigh the interests of the litigants, as well as the interests of the judiciary and the interests of the public as a whole—including the public interest in developing judicial precedent. *Id.* at 26.

In order to implement the "equitable nature of the Supreme Court's *Bancorp* inquiry," federal courts "determine the propriety of granting vacatur by weighing the benefits of settlement to the parties and to the judicial system (and thus to the public as well) against the harm to the public in the form of lost precedent." *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1336 (11th Cir. 2016). "The precise application of this approach will vary case by case." *Id.*; *see also, e.g.*, *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc) (examining the equities and granting vacatur due to settlement); *Motta v. Dist. Dir. of I.N.S.*, 61 F.3d 117, 118 (1st Cir. 1995) (similar); *Major League Baseball Props., Inc. v. Pacific Trading Cards, Inc.*, 150 F.3d 149, 152 (2d Cir. 1992) (similar).

In this case, the Parties have reached a tentative agreement to settle this case on mutually agreeable terms. The settlement includes a substantial monetary payment to the State of North Dakota, along with other terms negotiated by the Parties. As part of the settlement, the United States will dismiss its appeal and bring this matter to final resolution, thereby saving the Parties,

their respective taxpayers, and the judiciary the expenses of further litigation. However, that settlement agreement is contingent on this Court's vacating its judgment and the underlying orders. As such, "this is an instance where both parties to the settlement desire vacatur because settlement would otherwise be impossible." *Hartford Cas. Inc.*, 828 F.3d at 1336; *see also id*. (that "consideration[] weigh[s] heavily in favor of vacating the District Court's orders").

The Parties submit that they, as well as the federal judiciary, would be benefitted by settlement of this matter and final resolution of the underlying litigation. "The settlement 'concludes the need for this litigation to continue, saving the resources of the Courts and the [p]arties' by resolving 'both the Appeal before the [Eighth] Circuit and any subsequent litigation in this [C]ourt,' including actions on remand or for an award of [costs].'" *Johnson v. Specialized Loan Servicing, LLC*, 2019 WL 8437149, at *3 (M.D. Fla. Sept. 25, 2019) (citation omitted). And given that nearly a decade has already elapsed from the underlying conduct at issue, "there is no question that these litigants will benefit from putting this matter to rest." *PayRange, Inc. v. KioSoft Tech., LLC*, 2024 WL 4187980, at *2 (S.D. Fla. Aug. 1, 2024) (citation omitted).

Conversely, "without vacatur, both the district court and the appellate court would expend further resources on a case that—as of now—has been amicably settled." *Stryker Spine, a Div. of Howmedica Osteonics Corp. v. Spine Grp. of Wis., LLC*, 320 F.Supp.3d 985, 991 (E.D. Wis. 2018); *see also id*. ("To deny the vacatur and to expend further court resources … because the court already has expended a good deal of effort would be the equivalent of throwing good money after bad, both for the court and for the parties."). Moreover, the circumstances surrounding the DAPL protests continue to be a source of consternation for many, and the Parties believe that this settlement is the best way to move forward. Courts have "been more receptive to vacatur where, as here, 'vacatur would bring an end to the tortured history of a litigation." *Pitterman v. Gen.*

*Motors LLC*, 2018 WL 6435902, at *3 (D. Conn. Dec. 7, 2018) (rendering indicative ruling that court would vacate judgment to facilitate settlement).

On the other side of the ledger, the Parties acknowledge that vacatur would result in "harm to the public in the form of lost precedent." *Hartford Cas. Inc.*, 828 F.3d at 1336. However, the Parties respectfully note that "District court decisions … are not precedential in the technical sense: they … create no rule of law binding on other courts." *Reid*, 787 F.3d at 895 n.2 (citation omitted). Consequently, the harm to the public from vacatur due to settlement is "not implicated (at least as acutely) where a district court's decision—whose precedential value is limited only to its persuasiveness—would be taken off the books." *Green Valley*, 969 F.3d at 471. Vacating the judgment and underlying orders here would not prejudice any party's ability to cite this Court's analysis for its persuasive value in the event that circumstances similar to those at issue in this case may again arise. Furthermore, the Parties observe that the Court's legal analysis was in large part specific to the facts and circumstances that surrounded the DAPL protests in late 2016 and early 2017. As such, "the fact specific nature and unique circumstances underpinning the findings on which this Court based its orders make the benefit future litigants would derive from these decisions uncertain." *PayRange*, 2024 WL 4187980, at *1. Under these circumstances, the parties respectfully submit that the "value of preserving that precedent … is outweighed by the direct and substantial benefit of settling this case." *Hartford Cas.*, 828 F.3d at 1336.

The Parties additionally submit the following statements further addressing why they believe bringing this matter to a speedy resolution would be in the public interest.

### a. North Dakota's Additional Statement.

The State of North Dakota greatly appreciates the substantial amount of time, energy, and resources that the Court dedicated to overseeing and adjudicating this matter. The State believes

that the Court's judgments are legally correct, and it is prepared to defend them on appeal. However, the State also acknowledges that the United States has non-frivolous bases for seeking appellate review, and that affirmance by the Eighth Circuit or the Supreme Court is not a guaranteed outcome. Moreover, even if this Court's judgment is ultimately affirmed, appellate proceedings will considerably delay the final resolution of this matter, and they will impose significant additional costs upon the parties, the taxpayers, and the courts.

The settlement that has been reached with the United States will benefit North Dakota taxpayers and address the United States' actions during the DAPL protests. The settlement will also obviate the need for North Dakota taxpayers to continue expending significant resources fighting this matter on appeal and re-opening the injuries and frictions created by the DAPL protests for months or years to come.

The State recognizes that vacatur of the Court's judgment and underlying orders will vacate judicial precedent that has public value, and which could have utility holding the federal government to account for potential future violations of the Federal Tort Claims Act. However, because that precedent is based on an application of the law to the specific circumstances that surrounded the DAPL protests, the State respectfully submits that the "value of preserving this Court's ruling[s] on [FTCA liability] is strongly outweighed by the benefits to the parties in settling the litigation and to the public in preserving judicial resources." *Heartland Catfish Co. v. Navigators Specialty Ins. Co.*, 2018 WL 1913549, at *2 (S.D. Ala. Mar. 6, 2018) (rendering indicative ruling that court would withdraw its prior judgment to facilitate settlement).

    **b. The United States's Additional Statement.**

The United States also believes that vacating the Court's judgments and underlying orders to facilitate a settlement agreement would be in the public interest. While the United States

respectfully disagrees with the Court's factual findings and legal conclusions, the United States, like North Dakota, recognizes there are inherent risks and costs to further litigation. The United States believes that the public interest would best be served by bringing this matter to a swift close without further proceedings.

## CONCLUSION

In order to facilitate a settlement that will bring this litigation to final resolution, the Parties respectfully ask the Court to render an indicative ruling, pursuant to Federal Rule of Civil Procedure 62.1(a)(3), stating that the Court would grant the motion to vacate its judgment and underlying orders (Dkt. Nos. 38, 383, 453, 454) if jurisdiction were returned for that purpose.

Respectfully submitted,

| | |
|---|---|
| DREW H. WRIGLEY<br>  Attorney General | BRETT A. SHUMATE<br>  Assistant Attorney General |
| */s/ Philip Axt*<br>  PHILIP AXT<br>  Solicitor General<br>  600 E. Boulevard Ave., Dept. 125<br>  Bismarck, ND 58505<br>  701.328.2210<br><br>  *Counsel for plaintiff* | */s/ Jonathan D. Guynn (with permission)*<br>  JONATHAN D. GUYNN<br>  Deputy Assistant Attorney General<br><br>PETER MCNEILLY<br>  United States Attorney, District of Colorado<br><br>  United States Attorney's Office<br>  for the District of Colorado<br>  1801 California Street, Suite 1600<br>  Denver, CO 80202<br>  Telephone: (303) 454-0100<br>  Fax: (303) 454-0407<br><br>  *Counsel for defendant* |

February 2026